Good morning. We have three cases that are scheduled for oral argument this morning. The first is the United States of America v. Goldstein and Berkun. And Ms. Webster is here for Berkun. Mr. Parsley is here for Goldstein. And it looks like Mr. McLean is here for the court. Let's start with Ms. Webster. Good morning, and may it please the court. As you noted, I represent Mr. Berkun in this case. And this morning, I'm planning to address the material variance issue as well as the Frings issue, pending suggestion from the court, of course. Mr. Parsley, I believe, intends to address the remaining issues raised in his brief, including stale probable cause and involuntary statement to the SEC. After assuring the defense that it would only prove the misrepresentations charged in the indictment, the ones that were contained in the private placement memorandum, the government argued in closing, there's no requirement that a fraud has to be based on what someone says in the private placement memorandum. There was also the confidential investor information. That was given to the investors too. And if you lie in that, if the defendants lie in that, they're guilty. That's a misrepresentation. You can be guilty by lying orally, in writing, any kind of writing, and that's what the defendants did in this case. In combination with the evidence that was admitted over objection at trial, this constitutes a fatal material variance and necessitates a new trial for Mr. Berkoon and Mr. Goldstein. In this indictment, the government clearly charged three categories. This argument that you're objecting to now, was there an objection at trial to the argument? There is not an objection to the closing argument, but there were repeated objections to the evidence as it came in at trial. And at one point, counsel for Mr. Berkoon obtained a continuing objection to this evidence. So I think the issue is... If I'm understanding you, I've been involved in lots of fraud trials and you have an indictment that sets out false statements. And then when you actually get to the evidence of what went on day to day, it turns out there's often false statements every day in a fraud situation and during the And I've never been aware that it was appropriate to sanitize the trial presentation such that you just talk about the things in the indictment. And the indictment, I think, also says, including but not limited to these statements. Under the intrinsic evidence or race gesti, isn't the government allowed to present the whole story so that the jury can get a feel for what's going on day to day, even if there may have been some additional false statements not contained in the indictment? I think the problem with this case in particular, I think we accept that as a general matter, that if there are statements in the indictment and there's no further additional litigation about it, then potentially the government can introduce evidence at trial. But in this case, there was a motion for a bill of particulars where the defense sought clarification on exactly what misrepresentations would be presented. And they relied on the government's representations in that response to the bill of particulars. The government... And what you're talking about, the three general, there were more than three misrepresentations, right? So the three misrepresentations that were charged in the indictment were that the proceeds, the commission amounted to 12.5 percent, that people were paying $1 per chair, and the information statements about how that money was to be used. And so... You're not disagreeing the government offered evidence to prove those three things? I think they offered evidence to prove those, but the defense also put up evidence to combat that. And so that's exactly the problem here, because the government put up evidence of that, the defendants were on notice that those were the misrepresentations that the government was going to be pursuing, and then they prepared a defense to those. But in the government's response to the motion for a bill of particulars, this document 109, the government repeatedly says, it's only these three categories of information that we're going to pursue. And then they specifically, on page 14 and 15, disavow reliance on fault statements in the confidential investor information statement. So for example, when they're referring, they acknowledge that the defendants have asked what statements from that document will be used as misrepresentations at trial. And then they say, since these areas are not about the price of the offering, the commissions being paid, and the use of the proceeds, they are not among the statements specifically charging the indictment as being false. So that gives the defense the clear indication that the only misrepresentations that will be presented at trial are those that were charged in the indictment and described at length in the response to the motion for a bill of particulars. So you're not disagreeing they could have offered evidence about all these additional misrepresentations. You're saying they should not have been able to rely on those extra ones as a basis for a conviction. You're not saying the record has to be so sanitized that we only hear about three things and know other things, are you? I don't think the evidence should come in. I think the question of whether it's admissible as intrinsic evidence in a general case is separate and distinct from what happened here, where you have these prior misrepresentations or prior representations from the government about what they are going to introduce at trial. I want to note also in the motion for their response to the motion for the bill of particulars, they explicitly said if we develop additional misrepresentations, we will provide the defendants will be on notice of those. And so here there was no notice ever given. The defendants never had any idea that these misrepresentations were going to be introduced at trial or explicitly relied on in closing to urge the jury to convict them. And so they didn't have the chance to prepare defense as to those charges. And so that's the problem with this issue. That's why they need a new trial as necessary. You can look at closing argument. And in the PowerPoint presentation, there's a slide that says other misrepresentations. And then five more slides talking about the proof of those misrepresentations. And they were explicitly urged to convict on that basis. So that's the problem with that. Why was your argument to the jury that those additional misrepresentations were not included in the indictment? Why was that not sufficient to remedy any prejudice that might have occurred? Well, because they have already heard this evidence over repeated objection, right? And we don't know because there was no unanimity instruction. There was no special verdict form. There was nothing to indicate to the jury. Was there a request for unanimity instruction? There wasn't. And so that's why we haven't raised that as a separate issue. But I do think the absence of one helps us address prejudice here. I see my time is about up. Thank you, Ms. Webster. Thank you. Mr. Parsley. May it please the Court, Robert Parsley, Miller Martin for Appellant William Goldstein. I'd like to focus on two reasons for reversal. One is initial wiretap affidavit was based on stale probable cause. And the results of the wiretap should have been suppressed. Secondly, Mr. Goldstein was induced by a misleading statement to make an incriminating admission to an SEC investigative attorney. That statement should have been suppressed. Each of those is a harmful error. As to the wiretaps, probable cause must be fresh for a wiretap affidavit. And here there was an investment scheme in March and May of 2010. The initial wiretap affidavit was submitted June 24, 2011, well over a year later. There were three grounds for probable cause for the wiretap. First was the March and May 2010 conduct. And we contend that that is too far removed from the date of the affidavit for fresh probable cause. Secondly, the FBI agent admitted at trial that, you know, one of the primary reasons for the wiretap was to do a knock and talk and get, you know, a good sound bite from the defendants. And so it was obviously an attempt to refresh probable cause in the affidavit. And the affidavit tried to do that in two ways. First, by stating there was a new market manipulation on March 28, 2011. Okay. And on its face, the affidavit does not show probable cause that that occurred. It says that based on increased trading activity, based on a report from a Bulgarian website of unknown reliability, that a new market manipulation took place. And then the agent says the following. This shows that there was either an internet promotion, a market manipulation, or both. Which agent is that you're speaking of? That was Agent Taylor, who was the defiant. My notes here, I have here in my notes that he pointed out Goldstein's repeated contact with Gerald Adams from March the 22nd to March the 29th of 2011. Correct. And Mr. Adams... And more than normal interactions with Burkhum during that period. Correct. And the Securities and Exchange Commission trading dating shows a dramatic increase in MCGI's price and trading volume on March the 28th of 2011. That's correct. All that's correct. But the conclusion that the agent draws is that this was either an internet promotion or a market manipulation or both. An internet promotion is lawful. A market manipulation is unlawful. That shows a mere possibility, not a probability, that there was illegal conduct at that time. Aren't you asking us to read the affidavit in a hyper-technical manner, which is exactly what the Supreme Court counseled against? No, I'm asking this court to read it in a common sense manner. To say if there is a mere possibility, one of two options is this was legal conduct or this was legal conduct. That's a mere possibility and that's not good enough for probable cause. Probable cause is more than a mere possibility. The second basis for refreshing probable cause was a discussion between Mr. Burkhum and a confidential informant, CS1, about tax liability. The reason that that does not show probable cause first is CS1 was no longer a conspirator. He was acting at the behest of the FBI at that time and had long since gone over to the FBI. Secondly, when you look at the language from a common sense perspective... But the conversation with somebody that's gone over to the government could still create an inference that the scheme was ongoing based on that conversation. Right, but setting that aside, when you look at the language itself from a common sense perspective, it doesn't show wrongful conduct or a continuation of the conspiracy. You recognize that we're not the court that issued the warrant. I understand that. And so the probable cause has already been established. We must show great deference to that court. So how do you get us past that standard? This court can read... It was based on an affidavit and this court can read the affidavit just like the district court can read the affidavit on its face because on its face, there's a lack of fresh probable cause. Well, assuming all that to be so, we still have the How can you get past that obstacle? Because on its face, there is a lack of fresh probable cause. Well, that just wipes Leon out, doesn't it? You're saying we just go back and we parse the sentence and that ignores Leon totally. Agent walks out of the room. He's got a warrant. He thinks that's okay. The judge has approved it in good faith. And you're saying that we ignore all that and we go back as we would have before Agent should not have relied on it because it was... The judge told him it was okay. The judge said it was good. My second point is as briefed, this involuntary statement to the SEC induced Mr. Goldstein to make an incriminating statement under a promise of confidentiality. And there were no warnings to Mr. Goldstein that would overcome that promise. Each of those is a basis for reversal. Thank you. All right. Thank you, Mr. Priestly. We'll hear from Mr. McClain. May it please the court. My name is Steve McClain. I represent the United States and along with Alana Black here and we tried the case as well in the district court. I wanted to take the two issues in the order of my colleagues on the other side and start with the variance issue. There are a couple of problems with that argument that they've raised. First of all, these additional misrepresentations as they frame them are fairly included within the indictment. The indictment alleged broadly a scheme to defraud, a single scheme to defraud, a scheme to defraud fine.com investors and said they did so through misrepresentations. They then, the indictment actually mentions and cites to the confidential investor information document. It also cites to the private placement memorandum document, which are both the documents where these statements were made, what they refer to as additional misrepresentations. Those documents are actually and those explicitly referred to in the indictment. This evidence is in support of proving a single scheme to defraud fine.com and under the case law, that's not a variance. Other circuits have squarely, even if we assume there are additional misrepresentations not alleged in the indictment, other circuits have from the Eighth Circuit, which explicitly holds that even if the government proves additional misrepresentations that are not alleged in an indictment, that's not a variance. The Ninth and Tenth Circuits have both held the same thing. The Tenth Circuit and the Bailey case that we cite in our brief have explicitly held the same thing. The Bailey case involves a situation where the main fraud that was alleged in the indictment was that investors had been lied to about how their funds were going to be used and then the government introduced evidence that quarterly the defendants sent false quarterly statements to the investors and the Tenth Circuit said that's not a variance because there's still a single scheme to defraud the investors. These are just additional misrepresentations and furtherance of that same scheme and that's not a variance. What about your pre-trial statements that the only misrepresentations that the government was relying on were the three alleged in the indictment? I think, Judge Branch, you're referring to the Bill of Particulars. Correct. First of all, that was filed in August 2015, so it was about two and a half years before trial and so what occurred is as we were running up to trial and we interviewed witnesses, specifically Cynthia White and Constantine Derenstein, they're the ones who testified as to these other misrepresentations, but importantly what we said in the Bill of Particulars is that the government, quote, may discover other misrepresentations before trial and should not be limited only to proving those misrepresentations known to it at this time. And so we did forecast that there was going to be additional work done as trial preparation occurred and said there could be additional misrepresentations and we shouldn't be foreclosed. What about the fact that you filed the third superseding indictment two months prior to trial and did not add these additional misrepresentations to the indictment? Well, I think that's, I mean, one thing we were doing was trying not to change the indictment very much because we were getting close to trial. But again, I think it gets back to the idea that they are fairly included within the allegations of the indictment. There's no requirement as the judge, as the district court held in the Bill of Particulars, there's no requirement to detail evidentiary matter in an indictment because unlike a civil case with Rule 9, there's no requirement to plead the fraud with particularity and so there's no requirement to detail exactly every single misrepresentation that could come up at the trial. And as Judge Carnes points out, frequently in fraud cases there's a lot of things that a defendant did that are comes out at trial and there is no requirement that each and every misrepresentation or amnesty that a defendant has done, any evidentiary detail that would support the scheme be outlined in the indictment. But the decision that was made on the indictment was to try to cue it as closely as possible to the original indictment in language and we were correcting, there was a citation error in the statute at one point and that sort of thing. And so it was really the same indictment was being returned without changing the wording of that indictment very much. I note that you mentioned precedent from other circuits, but you ignore 11th Circuit precedent in the United States v. Lander. Well, and I think, Your Honor, that the 8th, 9th and 10th Circuits are entirely consistent with this Lander. As the general rule is set out in Champion, which I think preludes Lander, and what Champion says is that it's not a variance, this Court said in Champion, it's not a variance if the government proves things in addition to the indictment that are consistent with the indictment. That a variance occurs when the government proves things different from what's in the indictment. And Lander is a great example of that because what occurred in the indictment and then at trial, the government disproved that misrepresentation. Its witnesses actually testified that misrepresentation never occurred. The thing that was alleged in the indictment is untrue. And so as this Court pointed out in Lander, it was disproved, the actual indictment allegation. And what the government then did there is they introduced evidence of additional misrepresentations not specified in the indictment and then the jury convicted. And so this Court said that's a variance because something in the indictment was actually disproved and to obtain a conviction, the government came up with new misrepresentations to obtain a conviction. And so again, that's consistent with Champion, which talks about variances are whenever the evidence is different from, not in addition to, what's alleged in the indictment. And Champion and Lander fully support what the 8th, 9th, and 10th Circuits have done in Begnaud and Bailey because that's exactly the situation in those cases where evidence is just in addition to what's alleged in the indictment, consistent with the scheme alleged, but merely in addition to and that's not a variance. I wanted to, the one thing, Judge Branch, that you had asked about closing, I wanted to pick up on that. It's true that Mr. Goldstein's closing told the jury they could not consider these additional misrepresentations because they weren't alleged in the indictment. And as we've argued here today and in our brief, we think that's incorrect as a matter of law. But what the government argued in its reply is, out of an abundance of caution, to go ahead and say that's, the one thing that's not, that's not a true statement because those misrepresentations can be considered for state of mind and intent to defraud. And so under cases like Williford, the intrinsic evidence cases that this Court's issued, that as long as the additional criminal activity is part of a series of criminal, and part of the, you know, the series of criminal activity that the defendant's engaging in, is inextricably intertwined with the criminal activity alleged in the indictment. And even in those cases where it's not in the indictment, this Court's held that it can be considered for state of mind and intent to defraud and that sort of thing. And that's exactly what the government argued in its reply, or its rebuttal argument, is that even if they're not in indictment, you can consider it for those issues, and that's exactly what the law is. The last thing I did want to point out in terms of the notice issue, the defendants did have the FBI 302 interview reports of the witnesses prior to trial, so people knew what the witnesses were going to testify to before they testified. And there was a question about whether this was objected to at trial, and it was, there was continuing objections to the variance issue as the trial went on. Repeat that again, so you gave over as jinx material 302s, some of this information is presented by witnesses, and those witnesses' 302s were given to the defendant before the witness testified. That's correct, Your Honor. Well before trial. Like well before, what does that mean, how long before? It's outside the record, Your Honor. The answer is in December of 2017, the 302s for Cynthia White and Constantine. When was the trial? February 2018. So it was about six or seven weeks. You're saying nobody was surprised by any of this? That's correct, Your Honor. All right. We did have a, and I looked in the record to find something that would sort of, that this court could rely on for that. There was a telephone conference the week before trial where the parties were discussing the fact that, you know, the 302s had been produced, and there was an argument from defense counsel at that time about some of the emails that had been produced as being variances. And so there is some discussion in a pretrial conference about that. And I gather, you know, always back in the day when I was doing things actually as a lawyer, it was always a big deal whether or not the government had to turn over 302s, and I thought the legal answer was, no, you don't, but sometimes it's a good idea. You all went beyond what you had to do in discovery by giving 302s. Is that correct? That's correct, Your Honor. And we did, and the parties had a very collegial relationship in the trial that we actually came to agreements prior to trial of when we'd exchange experts and when we'd exchange rule 1006 summaries and that sort of thing. Again, not a lot of that's in the record. There is a brief from August 2017 where the defendants asked for a continuance of the trial, which was originally set in September of 2017, and some of this is detailed, and there's some emails attached to that brief that the parties had these agreements. And, of course, they changed some because the trial was continued, but we did have that sort of relationship and we did exchange that. The one thing I think you can look at in the record that really shows that, too, is that when each of these three misrepresentations were first introduced to the trial, there was no objection. So when Alan Weiner first said that the defendants did not have anti-spyware, there was no objection. When Cynthia White first testified that the description of Sientago was wrong in the confidential investor information, there was no objection. There was then a series of objections and frequent objections after that, so I don't want to leave . . . About different topics or . . . No, about that exact issue, about that exact issue. But I'm just saying . . .  The very first time that those witnesses testified about these three, there was not . . . And then after that, there was a series of objections and sidebars, and it became a frequent objection where the defendants were saying there was an invariance and that sort of thing. But I make the point to point out there was no motion to eliminate. And so even though this information was provided, there was no pretrial motions eliminated, no complaints about notice, no . . . well, there was complaints about notice on the telephone call, but there was no request to continue the trial because the notice was insufficient or anything like that. And in fact, when the . . . Notwithstanding awareness from 302s that witnesses would be testifying consistent with some of those things. That's correct, Your Honor. And there was no pretrial motion eliminated. In fact, the objection wasn't first raised at the time the witnesses initially testified to it. So when Ms. Brunson from the SEC had that public and confidential, and then those statements that he made were used against him at the trial, at the time that they had that conversation, was he a target of an investigation by either the SEC or the United States Attorney's Office? The answer to the U.S. Attorney's Office is definitely no. The record shows that the criminal investigation started in August 2010, and that's both in the Title III affidavits and in the district courts, really the magistrate judge's report and recommendation, which was later adopted by the district court. And so absolutely not for the U.S. Attorney's Office. I think the SEC would say they don't use phrases like targets, I believe. What about a person of interest? What Ms. Brunson testified to is that it was very preliminary. It was an early interview. She had called Mr. Goldstein because his name was listed in some of the press releases, and that it was very preliminary at that time. And I don't know if she sort of explicitly said he's not a target or a person of interest, but I think the import of her testimony is that it was a preliminary fact-finding type of interview that she had learned about MCGI, read press releases, was calling some of the people listed, he was one of the persons, and she didn't really view him . . . Well, what is your argument? What is your, besides the chronology events, what is your argument in response to their argument that this was wrong, what happened, that she should not have shared the information with the FBI thereafter? Well, in the sharing, Your Honor, there's a, you know, this Court in Edwards and Moses has said that there's no problem whatsoever with the SEC sharing information with the U.S. Attorney. Well, let me restate it, that whatever she said with him was not sufficient, your position, to mean that his statement should be suppressed. What's your argument on that? The primary argument is that she was told that this could be used by other law enforcement agencies or other agencies to . . . She told him that. She told him that by reading the Privacy Act script. Right. And so there was a factual finding in the District Court. She couldn't remember it, but she testified as to her practice, and this is what she always would have said, is that the information could be shared with other agencies to prosecute and investigate crimes. She always would have said that. There was no objection at the suppression hearing to that factual finding by the magistrate judge, which was adopted by the District Court, that that is what she said. And now on appeal, that's not . . . We submit, Your Honor, that's not clearly erroneous. That factual finding is not clearly erroneous. There is evidence in the record to support that finding. As far as the non-public and confidential, really that phrase is just in a form letter that was sent to the defendant after the fact. And Ms. Brunson testified, if that was discussed, she would have said to Mr. Goldstein, please don't discuss with others what I'm discussing with you. So there was no promise not to use this statement against her. There was no promise not to prosecute, and we believe under the case law that would make the statement voluntary. Thank you. All right. Thank you, counsel. Ms. Webster, you've reserved some time for rebuttal. Yes, Your Honor. I think the question presented by this case is whether or not the defense is can rely on the explicit promises made by the government. And the holding that we're asking the court to make is a narrow one. We're not asking the court to say in all cases everything must be included in the indictment or anything like that. All we're asking the court to find or to hold is that the defense is entitled to rely on the promises that the government makes prior to trial. And so the cases that the government has cited, the out-of-circuit cases, Begnaud and Bailey, none of those cases involve a situation in which there's this sort of pretrial litigation about what is going to be presented at trial. And so the only case . . . It's not what's presented at trial. It's what the government's theory of the falsity is, correct? I mean, they're not agreeing in a bill of particulars as to evidentiary matters or what 404B is coming in or intrinsic evidence or anything like that. It's the broad parameters of what the false statement is. I don't . . . So, no, they're not explicitly going into what evidence it is. But if you look at the response to the bill of particulars, it's fairly specific, including the part that I was describing earlier where they say repeatedly, these are the three areas of misrepresentations. And if it's not about those, it's not coming in. The defense doesn't have to be worried about it, is the message of this response sentence. Their argument is, is every fraud trial I've ever seen, every fraud trial, you have your specific things that were alleged to be lies. But in a fraud scheme, fraudsters typically, every day of the scheme, are saying many things that aren't true. And indictments would be about 1,000 pages long if you had to recite every one of those things. And I've never understood there to be any problem in terms of it being in the intrinsic evidence context, race gesti, state of mind, with sanitizing the trial so that it's only the three specific things that the indictment talks about. You're telling me we should go a different route here. And this particular case, because of the . . . explicitly because of the pretrial litigation about the bill of particulars. And so on that issue, I would point the Court to the Addison decision from the Ninth Circuit. It's the 2002 decision. And it says two things that I can't understand. Back to just the facts of this case. So you're saying that they should have ignored anything? Some of these other areas arguably did bear on their state of mind, their knowledge to defraud, did they not? So if the government had provided notice of them, we wouldn't be here. But the government didn't provide any notice. And so the point of an indictment is so that a defendant can be on notice as to what they have to defend against. And without any sort of notice, they have no It says . . . Was there a motion in limine to keep the government from talking about anything but these three things in the indictment? No, but I believe that's the expectation as it results from the motion for the bill of particular and that litigation. And those promises that the government made in those pleadings is what the R&R, the magistrate judge, and the district court relied on in denying the motion for a bill of particular. So I believe that the defendants were absolutely entitled to rely on it. I see my timer's up. Thank you. Barsley? Your Honor, first, the magistrate judge at the suppression hearing found as a matter of fact that the SEC attorney, Ms. Brunson, told Mr. Goldstein this inquiry is non-public and confidential. The government did not cross-appeal that fact-finding. Was it also consistent in the magistrate's ruling that she also told him that I'm free to share this with other government authorities? I think it was clear error for that finding because Ms. Brunson's testimony at the suppression hearing and her testimony at trial contradict each other. That's what the magistrate judge found, correct? The magistrate judge found that she recited the script and then at trial she said, well, I summarized the script. We don't know what she said. But the key point is even if she had recited the Privacy Act script, it says nothing about criminal prosecution, criminal authorities or anything of that nature. Why does she have to say anything? I know that it's certainly better for the government. Is there a requirement? She picks up the phone and says, I'd like to talk to you about what's going on with your company. Is there a requirement? He's not in custody. He's not in handcuffs. No. Did she tell him that she's the government? He's a savvy fraudster. He might not think, hey, there's a problem here. There is no requirement, Your Honor. But she told him this was confidential and nonpublic. Well, you're saying she deviated from the script, you think, to the extent that she did not tell him she might tell law enforcement. But now you're saying you don't think she deviated from the script because the only thing she said to him was this is confidential. No, no. What I'm saying, Your Honor, is we know she said this is confidential and nonpublic. We don't know how she qualified that promise by saying we can give it to other authorities or that sort of thing. And what I'm saying is even if she had read the script and said we can share it with other authorities, he still believed it was confidential. She never said this could be used to criminally prosecute you. So she never qualified her promise. Doesn't the Privacy Act script say even though you're not under oath, if you choose to answer questions, you must answer truthfully. It can be a criminal offense deliberately to provide false information to the staff of the SEC. That's perjury. That has nothing to do with prosecuting him based on his statement about his co-conspirator. But of course, the only way you could prosecute him would be to go to another agency. So he already knows antenna up. Some of this may get to another investigative agency. I think that's just putting too much burden. It's the government on Goldstein. It's the government's burden to prove that this statement was voluntary. It's not Goldstein's burden to prove it was involuntary. Voluntary. Involuntary is I'm under the influence of drugs. I'm mentally ill. That's a very, very high standard. I don't think your argument is that it's not voluntary. The cases I've seen, there's really typically no obligation. You pick up the phone. It's America. You call somebody who wants to talk. They're not in custody. You don't have to give any When you deceive the person with some explicit promises. Which is exactly what happened here. The USV Walton case from the Third Circuit is a very instructive case for why this was involuntary. This statement should have been suppressed. And as we pointed out in detail in our briefing, this was a harmful error. And the government has not met its burden on appeal to prove that it was a harmless error. Thank you, Mr. Parsley.